568 A.2d 210

In the Interest of TINA K., a Minor.

Appeal of MONTGOMERY COUNTY OFFICE OF
CHILDREN AND YOUTH.

Superior Court of Pennsylvania.

Argued April 6, 1989.
Filed Dec. 27, 1989.

Stephen P. Imms, Jr., Ambler, for appellant.
Wendy G. Rothstein, Lansdale, for participating party.

Before BROSKY, McEWEN and HOFFMAN, JJ.

McEWEN, Judge:

This is an appeal by the Montgomery County Office of Children and Youth Services (hereinafter "CYS"), from an order, which classified as *dependent* Tina K., a ten year old minor. Tina had been in the legal and physical custody of CYS as a result of voluntary placement with CYS by her parents in 1985. CYS asserts that the trial court erred (1) when it reversed its prior order of November 24, 1986, which classified the child as *abused,* and (2) reinstated her classification as *dependent.* We affirm.

The trial judge has aptly summarized the underlying factual history:

On November 25, 1985, legal and physical custody of Tina K., [then] eight and one-half years of age, was voluntarily transferred for a period of thirty days by her parents to the Office of Children and Youth Services of Montgomery County. The agency immediately obtained residential placement for the child at Silver Springs–Martin Luther School (hereinafter referred to as "Silver Springs"). Just prior to the conclusion of the permitted period of placement, [CYS] filed a Dependency Petition with the Juvenile Court alleging Tina K. was an ungovernable child because her parents were "unsuccessful at controlling (her) wild and hyper behavior."

Richard Blasetti, Esquire, having been appointed guardian *ad litem,* a hearing was held on December 18, 1985, before Juvenile Court Master Kent Albright, Esquire, and the resulting Master's Report filed January 3, 1986. Findings of Fact and Recommendations contained in this report affirmed both the child's ungovernability and her need for continued residential placement at Silver Springs. Exceptions were not filed and the Master's Recommendations became the Order of the Court [of January 9, 1986, and the child was thereby adjudicated dependent.]

On May 20, 1986, pursuant to 55 Pa.Code Sec. 3130.71, a Placement Review was conducted by Master Albright and his Findings of Fact and Recommendations affirmed by the Honorable William Nicholas on July 18, 1986. The child's continued placement was necessitated by an unaddressed alcohol dependency problem experienced by Mrs. K., parental inability to provide an emotionally secure environment, and the child's own need for the therapy and structure offered by Silver Springs. At no time were allegations of sexual abuse, or inappropriate sexual conduct by the child mentioned.

From November 25, 1985, until August of 1986, the physical custody of Tina K. was within the exclusive control of Silver Springs. Her parents enjoyed telephone contacts and approximately twelve home visits with their daughter during this period. On August 20, 1986, nine months after the child had been committed to Silver Springs, [CYS] informed the Court that Tina K. had been exhibiting inappropriate sexual conduct during the previous months of April and May. At a subsequent meeting with a [clinical social worker], Tina K. explained her conduct by accusing her father (Jack K.) of sexually assaulting her. As a result of the child's statements [CYS] requested the Court terminate all telephone contacts between the child and her parents and limit parental visitation to one hour every two weeks and then only under strict supervision by [CYS]. This request was granted, however, no Petition alleging sexual abuse was immediately forthcoming thereafter, as the Court had expected.

On November 24, 1986, approximately three months later, at a hearing originally scheduled as a Placement Review, [CYS] filed in open court a Juvenile Petition accusing Jack K. of sexually abusing his daughter and requesting her adjudication as a dependent/abused child. Jack K., having been given notice of the agency's intention, agreed that an adjudication hearing could be conducted on this date. Accordingly, the hearing was held.

At the hearing, Sharon Fyffe, Christina Walton, and Judy Nissen all social workers supervising Tina K. at Silver Springs, and Ralph Battinieri, a [clinical social worker] specializing in child abuse, retained by [CYS], testified. All spoke of conversations with Tina K. in which she stated that her father had sexually assaulted her. Tina K. never testified herself, nor was any explanation offered by [CYS] to explain the reasons for her absence from the courtroom. Counsel for Jack K. objected to this testimony as hearsay and also raised the question of the child's "unavailability" and the constitutionality of the statute.

The hearsay statements of Tina K. given to the aforementioned persons constituted the sole evidence against the father who emphatically denied the allegations. Moreover, Mrs. K., who according to [CYS's] own affidavit, disbelieved her daughter, was not present because of her death the previous month.

The court determined at the conclusion of the hearing of November 24, 1986, that the child "is a dependent abused child". The record reflects the following chronology of events subsequent to this ruling that the child was dependent/abused:

1. December 22, 1986—Appellee filed a Notice of Appeal from the Order of November 24, 1986.

2. March 25, 1987—The appeal was withdrawn and discontinued as a result of a stipulation of the parties.

3. June 18, 1987—The court, after argument, reversed its order of November 24, 1986, which classified the child as dependent/abused and reinstated the previous classification, namely, that she was a dependent/ungovernable child.[1]

The trial court recounted in its order of June 18, 1987, the basis for its decision to classify the child as dependent/ungovernable, and not as abused:

1. The exact provisions of the order from which this appeal has been taken state, *inter alia:*

The Court's decision is based on a finding that the due process rights of Jack K. were violated in that as a result of the Office of Children and Youth's failure to make a showing of Tina K.'s "unavailability" to testify at the time of trial, Jack K. was denied the opportunity to confront his accuser and the opportunity to cross-examine through his counsel.

The issue presented by this appeal arises from the child victim exception to the hearsay rule created by the Act of 1986, February 21, P.L. 41, No. 14, Section 1:

### § 5986. Hearsay

A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability.

42 Pa.C.S. § 5986.

Appellant asserts that the court erred when it imposed upon CYS the further condition precedent of demonstrating

"... the decision of the Court entered the [24th] day of November, 1986 finding Tina K. to be dependent/abused is hereby reversed. Tina K. shall remain classified as a dependent/ungovernable child."
A careful scrutiny of the actual record does not reveal an order which earlier classified the child "dependent/ungovernable". Moreover, the initial order of classification, namely, the order of adjudication of January 9, 1986, is a printed form which expresses an adjudication of the child as "dependent/abused". Nonetheless, the trial court makes clear, and appellant does not dispute, that the order of January 9, 1986, served merely to adopt the report of the Master of January 3, 1986, and that the report of the Master did not recommend that the juvenile be adjudicated "dependent/abused" but instead specifically recommended "to the court that the said juvenile be adjudicated a dependent child". Thus we accept as a fact that the adjudication of January 9, 1986, classified the child as "dependent" by reason of being ungovernable and not as "dependent/abused".

the "unavailability" of the assertedly abused child since the statute prescribes but one prerequisite to the admissibility of such testimony, namely, "sufficient indicia of reliability". Since, appellant argues, the trial court declared that "sufficient indicia of reliability" attended the hearsay testimony of the social workers presented by CYS, the trial court erred when it refused to classify the child as dependent/abused, and instead persisted in the classification of dependent/ungovernable.

Our study of the challenge presented by appellant proceeds from this factual posture:

> The testimony of four of the witnesses presented by CYS contained statements by the child describing sexual abuse.
>
> Those statements would not be "otherwise admissible by a statute or court ruling" because, the statements, as out of court declarations, are hearsay.
>
> The court concluded that there existed "sufficient indicia of reliability" as to make the statements admissible hearsay under Section 5986.

The issue is, therefore, clear and narrow: Must, under 42 Pa.C.S. § 5986, the presentation into evidence of the out-of-court statements of a child be preceded by evidence—and a finding—that the child is "unavailable" because the appearance of the child as a witness would adversely traumatize the child?

We agree with the decision of the distinguished Judge Paul W. Tressler (1) that if a child is "unable to testify because of trauma", she is "unavailable", (2) that such "unavailability" is to be the subject of judicial determination, and (3) that, absent a demonstration by CYS of that unavailability, the statements of the child were inadmissible.

The trial court viewed the question we consider as:

> The issue in the instant matter is *not* whether the due process rights of parents accused of sexual abuse should be ignored or lessened when a child is so traumatized by

the courtroom that she is incapable of giving testimony. Rather the issue is whether a parent's due process rights can be totally ignored in a dependency proceeding when the child *is not* traumatized and *is capable* of testifying.

and decided:

In conclusion, fundamental fairness requires that a parent accused of sexually abusing his child be given an opportunity to confront and cross-examine that child in dependency proceedings. These rights, however, will be limited to permit a child's hearsay statements into evidence under two circumstances. First, if the child testifies at the hearing and is subject to cross-examination, a prior hearsay statement may come in as both corroborative and/or substantive evidence. On the other hand, if a child does not testify at the hearing, the hearsay statement may still be introduced, but only if the Court finds that the reason the child failed to testify was because he or she was "unavailable".

The care and protection of the children of our Commonwealth is, of course, a sacred trust. A similar hallowed duty is to preserve the protections of the Bill of Rights. We are here called upon to weigh the precious balance between these commandments.[2]

---

**2.** The Bill of Rights in the Sixth Amendment to the United States Constitution mandates:

In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....

The Constitution of the Commonwealth of Pennsylvania proclaims in Article 1, Section IX:

In all criminal prosecutions the accused hath a right ... to meet the witnesses face to face....

There is no more scarlet "A" than that branded upon the abuser. An accusation of incest, or other sexual abuse upon a child, hurls the accused into the deepest, darkest abyss where the lash of shame and scorn is matched only by the cries of the furies for vengeance. It is, therefore, of no consequence that the accused confronts these charges in the family forum and not the criminal court. Thus, the *constitutional* right of appellant to confrontation is firm and certain.

Every bit as firm and certain, on the other hand, is the *human* right of the child to be free of the trauma of appearance in court and exposure to the torment of savage cross-examination. Human rights are inherent elements of the moral order, and while philosophers may differ as to a precise definition of human rights, and legal scholars do

The legislature, at the outset of the Act which afforded to children the protection we here study, proclaimed:

### § 5981. Declaration of policy

In order to promote the best interests of the children of this Commonwealth and in recognition of the necessity of affording to children who are material witnesses to or victims of crimes additional consideration and different treatment from that of adults, the General Assembly declares its intent, in this subchapter, to provide these children with additional rights and protections during their involvement with the criminal justice system. The General Assembly urges the news media to use restraint in revealing the identity or address of children who are victims of or witnesses to crimes.

42 Pa.C.S. § 5981.

The legislators of Pennsylvania, our ever esteemed partners in government, have always been most sensitive when

not always agree as to what may be designated a human right, they are of one mind that the advent of mankind and of the moral order were simultaneous. That moral order is manifested in and by the laws of humanity. Those laws of humanity confer human rights upon each individual simply because he or she is a human, and not by reason of any legislative enactment, executive decision, or court decree—nor even by constitutional mandate or decision of the majority. Constitutions are to be revered, and enacted laws deserve respect, provided, of course, that their provisions do not clash with human rights.

The founders of our nation considered such human rights so critical that they proclaimed at the outset of the Declaration of Independence:

When in the Course of human events it becomes necessary for one people ... to assume ... the separate and equal station to which the *Laws of Nature and of Nature's God* entitle them, ... they should declare the causes which impel them to the separation.—We hold these truths to be self evident, that *all men* are created equal, that they *are endowed by their Creator with certain unalienable Rights....* (emphasis supplied).

The Bill of Rights extended explicit guarantee of certain human rights, and declared in the Ninth Amendment that the Constitution was not to be considered a delineation of all human rights, because certain rights of "the people" are inherent and, while worthy of constitutional protection, require not expression there. Surely the human right of a child to be free of the trauma of the circumstances attendant a court appearance is such a human right and is as firm and certain as any of the rights guaranteed in the Bill of Rights.

weighing human laws and constitutional protections. Surely then, the legislature intended that the protection of the human rights of children should require only such sacrifice of the constitutional right of confrontation as is necessary. The tension between the rights of two individuals in an adversarial status need effect an intrusion of one right upon the other only in that extraordinary situation when every means of easing the tension by adjustment of those competing rights has been employed but is unsuccessful. Here the adjustment of the competing rights to ease the tension between them—as well as the goal of the legislature to intrude upon the constitutional right of confrontation for only so much as is necessary to protect the child—can be achieved if we were to impose a restrictive interpretation of the statutory exceptions upon the hearsay rule enacted by Section 5986. Therefore, we hold:

> That this child victim exception to the hearsay rule may only be invoked when the trial court determines that the actual appearance of the child as a witness would cause such trauma as would harm the child.

> That, upon a finding by the court that protection of the child requires application of this hearsay exception, the statements of the child are admissible as substantive evidence.

>> That, following the presentation of testimony from the child as a witness, the statements of the child are admissible as substantive evidence and/or corroborative evidence.

Order affirmed.[3]

3. The record does not reflect the basis for reference during the presentation of oral argument that a finding of dependent/abused will effect a higher rate of reimbursement to the county for the care of the child than would a finding of dependent/ungovernable. Nor does the record disclose the varying consequences to the child of a finding of dependent/abused and dependent/ungovernable since the child was, in any event, to remain in the custody of CYS. It is repugnant, of course, to contemplate that such enhanced reimbursement would motivate CYS to pursue a finding of abuse, and, therefore, we assume that the hint of such a motivation is spurious.