IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C.S.,                                    :
                    Petitioner           :
                                         :    No.  440 M.D. 2017
          v.                             :
                                         :    Submitted:  January 26, 2018
Commonwealth of Pennsylvania,            :
Department of Human Services,            :
Bureau of Hearings and Appeals,          :    CASE SEALED
                    Respondent           :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION BY
JUDGE McCULLOUGH                              FILED:  April 10, 2018


          Before the Court in our original jurisdiction are the preliminary objections filed by the Department of Human Services, Bureau of Hearings and Appeals (BHA), to the petition filed by C.S. (Petitioner).

          On September 29, 2017, Petitioner filed a petition for review, stylized as a "Petition for Declaratory Judgment" (Petition), averring as follows.  Petitioner is certified in Pennsylvania as a professional educator.  He was indicated as a perpetrator of child abuse in two separate reports filed by the County Children and Youth Services (CYS) and placed on the Childline Registry.  Petitioner then filed petitions to expunge the indicated reports and, on appeal, the BHA sustained one indicated report and

dismissed the other as unfounded. Both cases are currently pending before this Court.[1] (Petition, ¶9.)

Meanwhile, the Department of Education, Professional Standards and Practices Commission (Commission), commenced a disciplinary proceeding against Petitioner's professional license. Based upon pre-hearing statements filed with the Commission, Petitioner discovered that "persons who testified in the two separate child abuse expunction proceedings before the [BHA] are expected to testify." (Petition, ¶9.) In filing the Petition, Petitioner desires "to use the transcripts of the prior testimony taken from such persons in the child abuse expunction proceeding in cross-examining them at the upcoming hearing on the action before the . . . Commission." (Petition, ¶10.)

According to Petitioner, the transcripts are designated as confidential information under statutory law and counsel for the Commission objects to their disclosure during the licensing matter. Petitioner seeks a declaration authorizing him to utilize the transcripts for the stated purpose, asserting that the theory of fundamental fairness inherent in the Due Process Clause[2] mandates this result.

On November 1, 2017, the BHA filed preliminary objections, contending that the Petition failed to state a claim upon which relief can be granted. The BHA further asserts that the Petition does not conform to law or rule of court.

Thereafter, Petitioner filed an answer and, in proper course, both parties submitted briefs in support of their respective positions.

---

[1] *See* Nos. 1294 C.D. 2016; 1412 C.D. 2017.

[2] U.S. Const. amend. XIV, §1.

## Discussion

## Failure to State a Claim (Demurrer)[3]

The BHA contends that the transcripts of the witnesses' testimony in the expungement proceedings are confidential material under the Child Protective Services Law (CPSL)[4] and supersede any due process rights that Petitioner may have. Petitioner argues the converse.

As a constitutional concept, due process is fully applicable to administrative hearings involving substantial property and/or liberty rights. *Soja v. Pennsylvania State Police*, 455 A.2d 613, 615 (Pa. 1982). Upon receiving his educator's license, Petitioner secured a protected property interest in the practice of his profession and, as such, "he must be afforded procedural due process in adjudicating any administrative charges against him." *Telang v. Bureau of Professional and Occupational Affairs*, 751 A.2d 1147, 1150 (Pa. 2000). Petitioner also possesses a protected liberty interest in his reputation, which independently entitles him to procedural due process under the Pennsylvania Constitution as "an individual accused of child abuse." *Northumberland County Children & Youth Services v. Department of Public Welfare*, 2 A.3d 794, 798 (Pa. Cmwlth. 2010); *see R. v. Department of Public Welfare*, 636 A.2d 142, 149 (Pa. 1994).

Broadly speaking, the principles of due process "require an opportunity, among other things, to hear the evidence adduced by the opposing party, cross-examine

---

[3] In ruling on preliminary objections in the nature of a demurrer, the Court must accept as true all well-pleaded material facts and all inferences reasonably deducible therefrom. *Barndt v. Pennsylvania Department of Corrections*, 902 A.2d 589, 592 (Pa. Cmwlth. 2006). However, the Court is not required to accept as true legal conclusions, unwarranted factual inferences, argumentative allegations, or expressions of opinion. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013) (en banc).

[4] 23 Pa.C.S. §§6301-6386.

3

witnesses, introduce evidence on one's own behalf, and present argument." *D.Z. v. Bethlehem Area School District*, 2 A.3d 712, 720 (Pa. Cmwlth. 2010). "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses," and this holds true even when "administrative . . . actions were under scrutiny." *Goldberg v. Kelly*, 397 U.S. 254, 269-70 (1970); *see Hammad v. Bureau of Professional and Occupational Affairs, State Board of Veterinary Medicine*, 124 A.3d 374, 381 (Pa. Cmwlth. 2015). The United States Supreme Court has described cross-examination as "a right traditionally relied upon expansively to test credibility as well as to seek the truth." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 259 (1983). Indeed, cross-examination is "the greatest legal engine ever invented for the discovery of the truth," *California v. Green*, 399 U.S. 149, 158 (1970), and is "a vital feature of the law." *Greene v. McElroy*, 360 U.S. 474, 497 (1959) (citation omitted).

However, section 6339 of the CPSL declares that reports of child abuse, as well as "any other information obtained . . . concerning alleged instances of child abuse . . . shall be confidential." 23 Pa.C.S. §6339.[5] In turn, section 6340 of the CPSL

---

[5] In its entirety, this section provides:

> Except as otherwise provided in this subchapter or by the Pennsylvania Rules of Juvenile Court Procedure, reports made pursuant to this chapter, including, but not limited to, report summaries of child abuse and reports made pursuant to section 6313 (relating to reporting procedure) as well as any other information obtained, reports written or photographs or X-rays taken concerning alleged instances of child abuse in the possession of the department or a county agency shall be confidential.

23 Pa.C.S. §6339. Section 6313(a) of the CPSL states that a person required to report child abuse must submit oral and written reports to the Department of Human Services (Department) or county agency within certain time-frames. 23 Pa.C.S. §6313(a).

lists 18 exceptions and allows for disclosure of child abuse reports and other information to specified persons, entities, and agencies, while mandating that some persons, entities, and/or agencies receive only limited information. 23 Pa.C.S. §6340.[6]

---

[6] In a somewhat condensed version, this section states:

> (a) General rule.— Reports specified in section 6339 (relating to confidentiality of reports) shall only be made available to:
>
> (1) An authorized official of a county agency, of a Federal agency that has a need for such information to carry out its responsibilities under law to protect children from abuse and neglect . . . [;]
> (2) A physician examining or treating a child . . . [;]
> (3) A guardian ad litem or court designated advocate for the child;
> (4) An authorized official or agent of the department in accordance with department regulations or in accordance with the conduct of a performance audit . . . [;]
> (5) A court of competent jurisdiction . . . pursuant to court order or subpoena in a criminal matter involving a charge of child abuse . . . . Disclosure through testimony shall be subject to the restrictions of subsection (c);
> (5.1) A court of common pleas in connection with any matter involving custody of a child as set forth in sections 5328 (relating to factors to consider when awarding custody) and 5329.1 (relating to consideration of child abuse and involvement with protective services);
> (6) A standing committee of the General Assembly . . . [;]
> (7) The Attorney General;
> (8) Federal auditors if required for Federal financial participation in funding of agencies . . . [;]
> (9) Law enforcement officials of any jurisdiction, as long as the information is relevant in the course of investigating cases of [crimes and abuse];
> (10) The district attorney's office or other law enforcement official . . . [;]
> (11) Designated county officials, in reviewing the competence of the county agency or its employees pursuant to this chapter . . . [;]
> (12) A mandated reporter of suspected child abuse under section 6311 . . . [;]
> (13) School administrators and child-care service employers . . . [;]
> (14) A prospective adoptive parent, approved by an adoption agency,

For example, section 6340(b) authorizes disclosure of confidential information to the "subject of the report," 23 Pa.C.S. §6340(b), which is defined in pertinent part as "any alleged or actual perpetrator in a report made to the department or a county agency." Section 6303(a) of the CPSL, 23 Pa.C.S. §6303(a). As the alleged

---

when considering adopting an abused child in the custody of a county agency . . . [;]

(15) Appropriate officials of another county or state regarding an investigation related to child abuse or protective services when a family has moved to that county or state . . . [;]

(16) Members of citizen review panels convened pursuant to section 6343.1 (relating to citizen review panels) . . . [;]

(17) A member of a child fatality or near fatality review team under section 6365(d);

(18) The Department of the Auditor General in conjunction with the performances of the duties designated to the Office of Auditor General, except that the Auditor General may not remove identifiable reports or copies thereof from the department or county agency.

(b) Release of information to subject.— Upon a written request, a subject of a report may receive a copy of all information, except that prohibited from being disclosed by subsection (c), contained in the Statewide database or in any report filed pursuant to section 6313 (relating to reporting procedure).

(c) Protecting identity.— Except for reports under subsection (a)(9) and (10) and in response to a law enforcement official investigating allegations of false reports under 18 Pa.C.S. §4906.1 (relating to false reports of child abuse), the release of data by the department, county, institution, school, facility or agency or designated agent of the person in charge that would identify the person who made a report of suspected child abuse or who cooperated in a subsequent investigation is prohibited. Law enforcement officials shall treat all reporting sources as confidential informants.

23 Pa.C.S. §6340(a)-(c).

perpetrator of "child abuse,"[7] Petitioner is entitled "to receive a copy of all the information in the Statewide central register or in any report filed with the county agency." *Northumberland County Children & Youth Services*, 2 A.3d at 801; *see* 23 Pa.C.S. §6340(b). Petitioner alleges that, consistent with this statutory scheme, he presently "has copies of the testimonial transcripts," (Brief at 9),[8] and requests an order from this Court approving their usage for cross-examination in the licensing matter. We note, as "a general rule, discovery as provided by the rules of civil procedure are not available in administrative proceedings." *Pennsylvania Bankers Association v. Department of Banking*, 981 A.2d 975, 997 n.18 (Pa. Cmwlth. 2009).

Importantly, in its current codification, section 6340(5) also permits disclosure of all confidential information, except for the identity of those persons reporting child abuse and/or cooperating with an investigation, pursuant to an "order or subpoena in a criminal matter involving a charge of child abuse." 23 Pa.C.S. §6340(5). With the same exception, disclosure of all confidential information is allowed under section 6340(5.1) in "any matter involving custody of a child" and particularly when the case involves an allegation of child abuse. 23 Pa.C.S.

---

[7] When we refer to the term "child abuse," we intend the phrase to have global and broad meaning, but at least encompassing the conduct prescribed in the CPSL as any act or failure to act, committed in an intentional, knowing, or reckless manner, that causes a child to sustain bodily injury, serious mental injury, sexual abuse or exploitation, or otherwise constitutes neglect endangering the life or development of the child. *See* 23 Pa.C.S. §6303(b)(1). This definition of child abuse naturally subsumes conduct that is designated as a crime under the Crimes Code, 18 Pa.C.S. §§101-9402, as well as conduct that could result in adverse consequences in dependency and custody matters. *See generally In re L.V.*, 127 A.3d 831 (Pa. Super. 2015); *M.W. v. S.C.W* (Pa. Super., No. 468 MDA 2014, filed November 18, 2014) (unreported); *see also infra* n.18.

[8] Section 6336(a) of the CPSL documents and limits the specific type of information that must be obtained in the Statewide database. 23 Pa.C.S. §6336(a). Among the information required to be included is "[t]he progress of any legal proceedings brought on the basis of the report of suspected child abuse." 23 Pa.C.S. §6336(a)(15).

§6340(5.1).[9]  Finally, section 6339, working in tandem with a Rule of Juvenile Court Procedure, permits disclosure of confidential information related to child abuse when the county agency intends to submit that evidence in a dependency hearing as proof that the child is not receiving proper parental care.  *See* 23 Pa.C.S. §6339; Pa.R.J.C.P. 1800(8).[10]  In these three proceedings, by virtue of the disclosure, the "defendant"[11] can use the information once protected by the CPSL as rebuttal evidence, assuming it meets any other requirements for admissibility.

Here, the parties agree that the transcripts fall within the scope of section 6339 as "any other information obtained" by the county agency and constitute confidential information.  Facially, there is no readily discernable exception in section

---

[9] Added by Section 11 of the Act of December 15, 1998, P.L. 963, and later amended by Section 6 of Act 2013-107, P.L. 1167.

[10] On August 21, 2006, our Supreme Court adopted Pennsylvania Rule of Juvenile Court Procedure 1800(9), and suspended section 6339 to the extent the statute was inconsistent with Rule 1340(B)(1)(e), which provides for the disclosure of reports if the reports will be used as evidence in a hearing to prove dependency of a child.  Pa.R.J.C.P. 1340(B)(1)(e).  *See* Pa.R.J.C.P. 1800(9) ("This rule provides for the suspension of the following Acts of Assembly that apply to dependency proceedings only . . . The Act of December 19, 1990, P.L. 1240, No. 206, §2, 23 Pa.C.S. §6339, which provides for the confidentiality of reports made pursuant to the [CPSL], is suspended only insofar as the Law is inconsistent with Rule 1340(B)(1)(e), which provides for the disclosure of such reports if the reports are going to be used as evidence in a hearing to prove dependency of a child."); Pa.R.J.C.P. 1340(B)(1)(e) (Mandatory disclosure) ("The county agency shall, when applicable, permit a party to inspect and copy or photograph . . . any police reports, records of prior county agency involvement, or records of current or prior reports involving the [CPSL] that the county agency intends to use as evidence at a hearing").

Our General Assembly apparently recognized this rule when it revised section 6339 in 2014 and added the phrase, "or by the Pennsylvania Rules of Juvenile Court Procedure."  *See* Section 7 of Act 2014-153, approved October 22, 2014, eff. December 31, 2014.

[11] We use the term "defendant" in its general sense to describe an individual against whom accusations are made, irrespective of the nature or label attached to the proceedings in which they are made.

8

6340 that would enable Petitioner to use and disclose the content of the transcripts in the licensing matter. The issue then becomes whether, notwithstanding the fact that the transcripts are deemed confidential under the CPSL, the Due Process Clause preempts the statute and says otherwise.

In determining what procedural due process requires in a given context, we employ the *Mathews* test, which balances (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see City of Philadelphia v. Perfetti*, 119 A.3d 396, 403 (Pa. Cmwlth. 2015) (en banc). The decisions of the United States Supreme Court establish that due process is a flexible concept, and the nature and extent of the process necessitated by the Constitution will vary depending upon the particular circumstances under which the deprivation of a protected liberty or property interest may occur. *Walters v. National Association of Radiation Survivors*, 473 U.S. 305, 320 (1985).

Reviewing the pertinent case law, we conclude that the first *Mathews* factor weighs heavily in favor of Petitioner. As mentioned above, he has a protected property interest in his profession *and* a fundamental liberty interest in his reputation. *See D.C. v. Department of Human Services*, 150 A.3d 558, 564 (Pa. Cmwlth. 2016) (en banc). It is a bedrock principle that once a professional license is acquired, it becomes "a valuable privilege or right in the nature of property," *Shah v. State Board of Medicine*, 589 A.2d 783, 787 (Pa. Cmwlth. 1991), and "[t]here is little doubt that Petitioner has a substantial interest to be protected." *Bhattacharjee v. Department of State*, 808 A.2d 280, 283 (Pa. Cmwlth. 2002); *see Telang*, 751 A.2d at 1150. Where,

9

as here, an administrative body is empowered to impose sanctions, which may include the revocation of a license to practice in the Commonwealth, "our courts have frequently recognized the severity of depriving a person of the means of a livelihood." *Shah*, 589 A.2d at 789.

At the same time, "[p]lacement on a registry for alleged child abuse causes damage to the alleged abuser, primarily in the form of reputational harm and employment repercussions." *J.P. v. Department of Human Services*, 170 A.3d 575, 581 (Pa. Cmwlth. 2017). The CPSL imposes a mandatory duty on the Department to provide the school administrator of Petitioner's employer with notice of the original allegation and a copy of the indicated report of child abuse. 23 Pa.C.S. §6340(13)(i). Emphasizing the lack of an adequate pre-deprivation procedure in the statute, this Court has acknowledged that harm occurs to an individual's reputation the moment the abuse is reported, the aggravation of which continues unless or until the record is expunged. *J.P.* 170 A.3d at 581-82; *see D.C.*, 150 A.3d at 563-67.

Prospectively, in the licensing matter, the Commission may order a "public reprimand" against Petitioner if it finds that he committed child abuse. 22 Pa. Code §235.5; *see* Section 9.3 of the Professional Educator Discipline Act (PEDA),[12] 24 P.S. §2070.9c, added by Section 6 of Act 2013-120. In any case where the Commission does not impose a "private" reprimand or sanction, the decision of the Commission and the reasons for its disciplinary measures "shall become public," section 17.2 of PEDA, 24 P.S. §2070.17(b), added by Section 11 of Act 2013-120,[13]

---

[12] Act of December 12, 1973, P.L. 397, 24 P.S. §§2070.1a-2070.18a, *as amended*.

[13] More specifically, in the event the Commission orders "public discipline," all the "records pertaining to proceedings . . . shall become public" upon the "exhaustion of all appeals" or, if the Commission determines, immediately and at the time it imposes the discipline, "excluding those records that are privileged or otherwise protected from release." 24 P.S. §2070.17.2(a).

10

with the "adjudication" specifically made "available on a publicly accessible Internet website." Section 15 of PEDA, 24 P.S. §2070.15, added by Section 8 of Act 2013-120. With this information being open and readily accessible to the eyes of the general public, the danger of stigmatization and ostracism is paramount. *Cf. G.V. v. Department of Public Welfare*, 91 A.3d 667, 672-73 (Pa. 2014); *R.*, 636 A.2d at 150. Consequently, there is a clear and present risk that Petitioner's reputation, as well as the reputation of others in similar circumstances, will be severely tarnished as a result of the license matter.

Moreover, as alleged by Petitioner, two witnesses from the expungement proceedings are expected to testify in the licensing matter against him, where the Commission will serve as the fact finder and presumably issue factual findings regarding the alleged incidents of abuse. *See Boguslawski v. Department of Education*, 837 A.2d 614, 617-18 (Pa. Cmwlth. 2003). "Cross-examination plays a crucial role in this regard because it enables the accused to expose testimonial weaknesses which would cause a fact finder to discount the weight of the testimony of an adverse witness." *R.,* 636 A.2d at 150. In Pennsylvania, "[i]t is well established that prior inconsistent statements are admissible as substantive evidence and for impeachment purposes," *Commonwealth v. Simmons*, 662 A.2d 621, 637 (Pa. 1995), and are one of—if not the most effective—ways through which to discredit a witness. *See generally Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986).

The courts have been uniform in concluding that, absent sufficient justification, the state must disclose to the defense any prior statements of an adversarial witness in administrative proceedings. *See Ubiotica Corporation v. Food and Drug Administration*, 427 F.2d 376, 381 (6th Cir. 1970); *Chief, Montgomery County Department of Police v. Jacocks*, 436 A.2d 930, 934-36 (Md. Ct. Spec. App.

1981).  The supporting rationale is that administrative proceedings "must satisfy the pertinent demands of due process," *Harvey Aluminum (Incorporated) v. National Labor Relations Board*, 335 F.2d 749, 753 (9th Cir. 1964), and "simple justice, the fundamentals of fair play, require no less," *Communist Party v. Subversive Activities Control Board*, 254 F.2d 314, 328 (D.C. Cir. 1958).

> In the words of one court:

> Depriving the defense of [previous] statements of opposition witnesses who testify greatly impairs such full presentation and rebuttal and obliterates the opportunity for meaningful cross-examination.  Without access to such statements, the defense is unable to test the memory, consistency, or veracity of the witnesses.  In short, the best tool of cross-examination is denied the defense when [prior] statements are withheld.

*Greco v. State Police Merit Board*, 245 N.E.2d 99, 102 (Ill. App. Ct. 1969).

With respect to the second factor—the risk of erroneous deprivation—our legal system "assumes that adversarial testing will ultimately advance the public interest in truth and fairness."  *Polk County v. Dodson*, 454 U.S. 312, 318 (1981).  In this vein, "[i]t is evident that any restriction . . . on the opportunity for . . . cross-examination of adverse witnesses enhances the risk of an erroneous deprivation."  *In re A.M.*, 13 P.3d 484, 488 (Okla. 2000).

Undoubtedly, a transcript of a witness' prior testimony is essential for purposes of cross-examination and may provide a defendant with critical information to effectively challenge the evidence presented against him in an administrative proceeding.  *See R.*, 636 A.2d at 149; *see also A.Y. v. Department of Public Welfare*, 641 A.2d 1148, 1151-52 (Pa. 1994).[14]  In cases where child abuse is alleged, there are

---

[14] In *A.Y.*, our Supreme Court condemned the practice of sustaining an indicated report based solely on hearsay evidence reciting what the child had stated had occurred.  Emphasizing the constitutional right of reputation, the Court concluded that this procedure denied the accused of the

"unique problems of proof, especially where there exists no independent physical evidence of abuse," *A.Y.*, 641 A.2d at 1152, the outcome oftentimes depends on credibility and weight determinations, and even the uncorroborated testimony of a victim, alone, is enough to sustain criminal convictions of the greatest magnitude. *See Commonwealth v. Bishop*, 742 A.2d 178, 189 (Pa. Super. 1999).[15] The very nature of this type of proceeding, too, increases the chances for an erroneous deprivation, and further supports the need to use evidence that discredits a witness' testimony. *See Goldberg*, 397 U.S. at 369-70; *cf. Harris v. Department of Corrections*, 714 A.2d 492, 496 (Pa. Cmwlth. 1998).[16] If Petitioner were not allowed to conduct the cross-examination he desires, the Commission would not have the benefit of information necessary to fully and fairly assess the credibility and weight of the witnesses' present testimony. *Cf. Doe v. United States Department of Justice*, 753 F.2d 1092, 1112-14 (D.C. Cir. 1985).[17]

---

right to review and challenge the evidence against him and prevented the fact finder from making a fair assessment of the evidence. Consequently, the Court created a set of guidelines to ensure that an indicated report be founded upon trustworthy evidence.

[15] In *Bishop*, the child testified at trial in a criminal case regarding the incidents of abuse. The Superior Court, noting the "well-established" rule that "even the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses," 742 A.2d at 189, upheld the defendant's convictions for involuntary deviate sexual intercourse and aggravated indecent assault, both of which are felonies of the first degree. *See* Sections 3123, 3125 of the Crimes Code, 18 Pa.C.S. §§3123, 3125.

[16] In *Harris*, a case where the Department of Corrections sought damages from an inmate due to his destruction of property, this Court explained that the risk of deprivation was minimal because the proceedings to determine damages are usually based on invoices reflecting the amount the Department paid and do not hinge on the credibility of the witnesses.

[17] In *Doe*, the Court of Appeals for the District of Columbia Circuit ruled that there was great risk for erroneous deprivation when the complainant, an employee of the federal government, was terminated based on information contained in affidavits from individuals whose reliability and

13

Notably, regarding the related, subsidiary factors of the *Mathews* test, the administrative and financial burden in permitting Petitioner to use the transcripts during cross-examination are negligible. Otherwise, the value of the procedural safeguard is considerably high and would greatly minimize the risk that Petitioner, and people like him, are divested of constitutional rights by way of a factual finding that is in error.

Considering the government's interest, the purpose of the confidentiality provision is "to protect abused children by encouraging more complete reporting of suspected child abuse without fear that information provided will be made public," *Northumberland County Children & Youth Services*, 2 A.3d at 799, and "by ensuring that persons with knowledge of abuse are not deterred from reporting it by the prospect of the abuser learning their identity and seeking retribution." *V.B.T. v. Family Services of Western Pennsylvania*, 705 A.2d 1325, 1335-36 (Pa. Super. 1998), *aff'd*, 728 A.2d 953 (Pa. 1999).[18] Although the Commonwealth, in general, has a "compelling interest in protecting its child-abuse information," *Pennsylvania v. Ritchie*, 480 U.S. 39, 60-61 (1987); *In re Estate of Wagner*, 880 A.2d 620, 625 (Pa. 2005), this does not immunize section 6339 from constitutional attack.

Pursuant to Pennsylvania decisional law, when a statute mandates that the privileged information cannot be disclosed to any individual, for any purpose whatsoever, it is absolute in nature and suffices to outweigh or abrogate the due process rights of an accused for the information. *See Department of Transportation v. Taylor*, 841 A.2d 108, 115-16 (Pa. 2004); *Commonwealth v. Wilson*, 602 A.2d 1290, 1295 (Pa. 1992) (plurality); *Commonwealth v. Kyle*, 533 A.2d 120, 130-31 (Pa. Super. 1987). However, the CPSL does not possess these characteristics. Read together, sections

---

veracity have been called into question, and the complainant did not have an adequate opportunity to confront his accusers.

[18]*See* Section 6302 of the CPSL, 23 Pa.C.S. §6302.

14

6339 and 6440 fail to grant "absolute authority to shield [the Department's] files from all eyes," *Ritchie*, 480 U.S. at 57, and instead evidence a qualified privilege by providing that "the information shall be disclosed in certain circumstances." *Id.* at 58.

In *Ritchie*, decided in 1987, the United States Supreme Court interpreted the confidentiality provision of section 6339 and the former version of section 6340, which then authorized release of the confidential information to a "court of competent jurisdiction pursuant to a court order." *Ritchie*, 480 U.S. at 44 (citation omitted). The Court concluded that the Due Process Clause required a criminal defendant to have access to the entire investigative file of CYS, via *in camera* inspection, in order to obtain exculpatory evidence. In so holding, the Court focused on the qualified nature of the statute, finding (at least implicitly) that the enumerated exceptions allowing disclosure diminished or reduced the state's interest in confidentiality. *See id.* at 57-58 & n.14; *Taylor*, 841 A.2d at 116. Reasoning that the CPSL "contemplated *some* use of CYS records in judicial proceedings" and, unable to find "any apparent state policy" that would prevent "disclosure in criminal prosecutions," the Court remanded the case for further proceedings at the trial court level. *Id.* at 58 (emphasis in original).

In *Taylor*, our Supreme Court cited *Ritchie* to draw a clear line between absolute and qualified privileges, signaling that the two are distinct substantively for purposes of the Due Process Clause. As such, *Taylor* and similar cases dealing with absolute statutory privileges are distinguishable and inapposite, and a different analysis should be controlling for a privilege that is qualified in the sense that it enables disclosure. *See Taylor*, 841 A.2d at 116-17; *see also Commonwealth v. Ritchie*, 502 A.2d 148, 151 (Pa. 1985), *aff'd in part and rev'd in part on other grounds by* 480 U.S. 39 (1987). Our Superior Court has reached and reaffirmed this very conclusion. *Kyle*,

15

533 A.2d at 130; *see Commonwealth v. Berger*, 96 A.3d 1049, 1053-54 (Pa. Super. 2014).[19]

Subsequent to *Ritchie*, the General Assembly amended section 6340 in 1998 and seemingly limited disclosure to criminal cases and custody matters involving an allegation of child abuse. *See* 23 Pa.C.S. §6340(5), (5.1); *Dauphin County Social Services for Children and Youth v. Department of Public Welfare*, 855 A.2d 159, 165 (Pa. Cmwlth. 2004).[20] In 2006, our Supreme Court adopted and promulgated a rule allowing disclosure in a dependency action that is based upon an allegation of child abuse. Pa.R.J.C.P. 1800(8); *see supra* n.9. Nonetheless, "the privilege created by the CPSL is [still] not absolute and disclosure of otherwise confidential information is therefore permitted where compelled by sufficiently weighty interests." *V.B.T.*, 705 A.2d at 1334; *see also Hannis ex rel. Hannis v. Sacred Heart Hospital*, 789 A.2d 368, 371 & n.3 (Pa. Cmwlth. 2001); *Pearson v. Miller*, 211 F.3d 57, 67-73 (3d Cir. 2000).

---

[19] In *Kyle*, the Superior Court distinguished *Ritchie* because, unlike the statute at issue in that case, the Pennsylvania statute synthesizing the psychologist-client privilege "was an absolute privilege" that "made no exceptions for disclosure." 533 A.2d at 130. In *Berger*, the Superior Court stressed the same distinction in a case where, given the record before it, the court could not "discern the extent to which disclosure is permissible or required" under the statutes governing confidential communications to sexual assault counselors and psychotherapists. 96 A.3d at 1052.

[20] In *Dauphin County Social Services for Children and Youth*, this Court noted that in 1998 our General Assembly amended the language of section 6340(a)(5) from "[a] court of competent jurisdiction pursuant to a court order" to "[a] court of competent jurisdiction . . . in a criminal matter involving a charge of child abuse." 855 A.2d at 165 (citations omitted). As a matter of statutory construction, we determined that, through this alteration, "the legislature indicated an intent to restrict the release of confidential information under Section 6339 even in the context of court proceedings only to specified types of criminal proceedings." *Id.* Notably, in *Dauphin County Social Services for Children and Youth*, this Court resolved the case based upon our interpretation of sections 6339 and 6340, and we declined to address any constitutional challenges to the CPSL.

We must determine whether such interests are present here. Succinctly, the statute operates to exclude Petitioner from using the transcripts in a licensing matter when he is accused of child abuse, yet would permit him (theoretically) to do so if he were confronted with the same accusation in a criminal, custody, or dependency case. *See C.E. v. Department of Public Welfare*, 917 A.2d 348, 354 (Pa. Cmwlth. 2007);[21] *In the Interest of Tina K.*, 568 A.2d 210, 213 (Pa. Super. 1989); *see also Johnson v. Johnson*, 731 N.E.2d 1144, 1146-48 (Ohio Ct. App. 1999). In our view, the selective and differential treatment and effect that the CPSL creates, the categorization it produces, and the resulting line of division are questionable and problematic. Just like the defendant in a criminal matter, or a defendant in a "civil law" custody or dependency dispute, *see Kline v. Kline*, 708 A.2d 503, 506 (Pa. Super. 1998); *In the Interest of Tina K.*, 6 Pa. D. & C.4th 18, 25 (Cty. 1988), *aff'd* 568 A.2d 210 (Pa Super. 1989), the defendants that stand in the shoes of Petitioner possess a duplicate, yet fundamental, right to defend reputational interests in the face of peril. Although the licensing matter will not result in a criminal conviction or physical confinement to an institution, the procedure to suspend or revoke a professional license "is penal in nature," *State Dental Council and Examining Board v. Pollock*, 318 A.2d 910, 916 (Pa. 1974), carrying with it "critical consequences" that include, among other things, "the loss of professional standing, professional reputation, and of livelihood." *Pennsylvania State Board of Pharmacy v. Cohen*, 292 A.2d 277, 282 (Pa. 1982) (citation and internal quotation marks omitted). In stating, "we emphasize that an accused person even in the context of a 'non-criminal' proceeding is not without his or her rights to due process." *A.Y.*, 641 A.2d at 1152. Although the Sixth Amendment right of confrontation applies only to criminal proceedings, *Dauphin County Social Services*

---

[21] This decision was criticized on unrelated legal grounds in *In Interest of L.Z.*, 111 A.3d 1164, 1180 (Pa. 2015).

*for Children and Youth*, 855 A.2d at 163, the right to confront and cross-examine witnesses in civil and administrative cases emanates from the Due Process Clause. *See Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 715 (Pa. Cmwlth. 2013); *Interest of Jones*, 429 A.2d 671, 675-77 (Pa. Super. 1981).

Instructively, in *In the Interest of Tina K.*, the Superior Court established that there was a constitutional right to confront and cross-examine witnesses in a dependency case that was based upon allegations of child abuse. The court said: "There is no more scarlet 'A' than that branded upon the abuser . . . . It is, therefore, of no consequence that the accused confronts these charges in the family forum and not the criminal court." 568 A.2d at 213 n.3. Similarly, our Supreme Court in *A.Y.* addressed procedural and evidentiary shortcomings in child abuse expungement cases, observing that, when the fundamental right to reputation is at stake, no meaningful distinction can be found in the form of the action:

> Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia*, its citizens' "inherent and indefeasible rights . . . of acquiring, possessing and protecting property and *reputation*,"[22] cannot blithely surrender those rights in the name of prosecutorial convenience.

*A.Y.*, 568 A.2d at 1152 (emphasis in original).

With convincing force, the rationale expounded in these cases applies to Petitioner's licensing matter and the proceedings before the Commission. To be sure, the current due process issue "cannot be reached by applying a wooden civil/criminal distinction. That approach has long since been abandoned in favor of emphasis on the

---

[22] Article 1, Section 1 of the Pennsylvania Constitution, Pa. Const. art. I, §1.

18

nature of the threatened deprivation." *Corra v. Coll*, 451 A.2d 480, 482 (Pa. Super. 1982) (citations omitted).[23]  Regardless of the forum in which child abuse is alleged (administrative or judicial), or the type of action through which an individual must defend against it (criminal, civil, or administrative), "the right to reputation . . . is a fundamental right under the Pennsylvania Constitution," *In the Interest of J.B.*, 107 A.3d 1, 16 (Pa. 2014), and maintains its potency invariably across the board.  *See, e.g.*, *id.*; *Hatchard v. Westinghouse Broadcasting Company*, 532 A.2d 346, 351 (Pa. 1987); *Wolfe v. Beal*, 384 A.2d 1187, 1189 (Pa. 1978); *Pennsylvania Bar Association v. Commonwealth*, 607 A.2d 850, 853-57 (Pa. Cmwlth. 1992).  Ultimately, given that reputational interests are threatened in a substantially similar manner in civil, criminal, and administrative actions, serious equal protection concerns would arise if sections 6339 and 6340 could deny Petitioner the opportunity to use the transcripts in the licensing matter to safeguard a fundamental constitutional right.  *See Pennsylvania Bar Association*, 607 A.2d at 857-58.

This conclusion is buttressed by an examination of the interplay between provisions of the CPSL and PEDA.  Perhaps incongruously, the relevant section of PEDA requires the automatic revocation of an professional educator's license, without a hearing, when an "indicated report" is converted into a "founded report," which can occur when there has been a finding of child abuse by a trial court in a criminal or dependency case.  *See* Section 9.4 of PEDA, 24 P.S. §2070.9d, added by Section 6 of

---

[23] In *Corra*, the Superior Court concluded that indigent defendants in civil paternity actions have a constitutional due process right to appointed counsel.  In that case, the Commonwealth argued that an adjudication of paternity does not directly result in the deprivation of a liberty interest, noting that Pennsylvania law has repealed the crime of "Neglect to Support Bastard."  In dismissing this contention, the court highlighted the nature of paternity actions and their attendant legal consequences and stated:  "[T]he civil/criminal distinction is unavailing in determining whether counsel is constitutionally required. Thus it is of no moment that paternity actions, once governed by criminal statutes, are now civil in nature."  451 A.2d at 481-82.

Act 2013-120; 23 Pa.C.S. §6303; *D.M. v. Department of Public Welfare*, 122 A.3d 1151, 1155-62 (Pa. Cmwlth. 2015). However, when there is only an indicated report, the Commission must institute its own proceedings and make independent factual determinations based on the evidence presented, but can nonetheless revoke the license. *See* 23 Pa.C.S. §6344(a.1.); sections 5 of PEDA, 24 P.S. §2070.5, added by Section 3 of Act 2013-120, section 9.3 of PEDA, 24 P.S. §2070.9c; 22 Pa. Code §§233.113; 235.6; *Whalen v. Department of Education*, 161 A.3d 1070, 1073-80 (Pa. Cmwlth. 2017); *Seltzer v. Department of Education*, 782 A.2d 48, 51-56 (Pa. Cmwlth. 2001).

Whereas the requested cross-examination may proceed in the former situations, it cannot be conducted in the latter. The combined effect of the two statutes is to sanction the revocation of a professional educator's license, without providing equivalent procedural protections in the evidentiary proceedings resulting in the license being revoked.

Moreover, in this particular context and at this point in time, the Commonwealth's interests in protecting the identity of those individuals who reported child abuse and the reports themselves do not seem to be implicated, much less undermined. *See* 23 Pa.C.S. §§6339, 6440(c). Petitioner seeks to utilize the transcripts of witnesses who have testified under oath in the prior expungement proceedings against him—not statements that individuals made to CYS in reporting or relaying that the abuse had occurred or information contained in investigative reports—and, ostensibly, he is aware of and knows the witnesses' identities. The transcripts of the expungement proceedings memorialize sworn testimony taken in an adversarial setting and, as such, the purpose for confidentiality in section 6339 does not appear to be frustrated in any palpable manner, and the Commonwealth's interest in cloaking the information must lie somewhere near the nadir. Pursuant to the constraints of PEDA,

20

proceedings before the Commission are closed to the public, and the transcripts of the expungement proceedings, if made part of the record, cannot ever be disclosed to the public.[24] In these circumstances, it is difficult to grasp how the use of the transcripts by Petitioner on cross-examination would compromise the CPSL's confidential reporting system or the privacy interests of the parties involved.

It is beyond cavil that all legislative acts have to abide by the constitution, and a statutory privilege may have to be narrowed or yielded if it unreasonably interferes with the guarantee of due process and the right to impeach a witness with prior inconsistent statements. *See, e.g.*, *Linder v. Smith*, 629 P.2d 1187 (Mont. 1981); *Robinson v. State*, 730 A.2d 181, 192 (Md. Ct. Spec. App. 1999); *Rinaker v. Superior Court*, 62 Cal. App. 4th 155, 166-67 (Cal. Ct. App. 1998); *see also Octave ex rel. Octave v. Walker*, 103 A.3d 1255, 1260-61 (Pa. 2014); *Hatchard*, 532 A.2d at 350-51. In *Linder*, a statute required claimants to submit medical malpractice claims to a specialized administrative panel for evaluation prior to filing a medical malpractice lawsuit in civil court. One provision of the act specified that "[no] statement made by any person during a hearing before the panel may be used as impeaching evidence in court." 629 P.2d at 1192 (citation omitted). In striking this legislation as unconstitutional, the Supreme Court of Montana concluded:

> It is fundamental to our adversarial system that litigants
> retain the right to impeach the sworn testimony of a witness

---

[24] There is no general First Amendment right conferred upon the public to attend administrative hearings, and Pennsylvania law dictates that the proceedings before the Commission be closed and conducted in a confidential manner. *See* 24 P.S. §2070.17.2(a); 22 Pa. Code §233.117(4); *Delaware Coalition for Open Government, Inc. v. Strine*, 733 F.3d 510, 513-14 (3d Cir. 2013); *North Jersey Media Group, Inc. v. Ashcroft*, 308 F.3d 198, 215-16 (3d Cir. 2002); *see also In re McLaughlin v. Philadelphia Newspapers Inc.*, 348 A.2d 376, 382-83 (Pa. 1975). Afterward, when the records before the Commission become public, the Commission must ensure that nondisclosure of "those records that are privileged or otherwise protected from release." Section 17.2 of PEDA, 24 P.S. §2070.17.b, added by Section 11 of Act 2013-120.

testifying against them.  We are mindful that this provision was enacted to aid the fact-finding by the panel and to preserve the confidentiality of the proceedings.  But we cannot say that a litigant will receive a full and fair hearing if he is unable to fully cross-examine in court the witnesses that testified in the prior hearing.

*Id.*

After considering the factors enunciated in *Mathews*, we conclude that, based on the allegations in the Petition, Petitioner has stated a claim upon which relief may be granted.  On balance, Petitioner's constitutional rights and the risk of erroneous deprivation, when compared to the Commonwealth's interest in confidentiality, tilt toward the conclusion that Petitioner may use the transcripts on cross-examination in the licensing matter.  Given the unique circumstances of this case, we conclude that the principles comprising due clause demand this outcome and that cross-examination is necessary to "protect the fundamental right of reputation guaranteed to the citizens of this Commonwealth."  *Hatchard*, 532 A.2d at 351.  We therefore overrule the BHA's preliminary objection in the nature of a demurrer.

**Failure of Pleading to Conform to Law or Rule of Court**

The BHA contends that the Petition should be dismissed because it is captioned as a "Petition for Declaratory Judgment" and not as a "Petition for Review in the Nature of a Declaratory Judgment."

The BHA is technically correct.  *See* Pa.R.A.P. 1502.  However, "courts should not be astute in enforcing technicalities to defeat apparently meritorious claims," *Monroe Contract Corporation v. Harrison Square, Inc.*, 405 A.2d 954, 958 (Pa. Super. 1979), and "may disregard any error or defect of procedure which does not affect the substantial rights of the parties."  Pa.R.C.P. No. 126; *see* Pa.R.A.P. 106.

22

Without question, the substance and content of the Petition is a civil action complaint, or a petition for review, seeking declaratory relief; the Petition substantially complies with the applicable rules; and the BHA has not suffered any discernable prejudice. When the only error in a pleading or legal theory pertains to improper word usage, such as how a claim is "titled," or some other minute matter, our courts routinely refuse "to elevate form over substance." *Thatcher's Drug Store of West Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 636 A.2d 156, 159 n.5 (Pa. 1994); *see Zokaites Contracting Inc. v. Trant Corporation*, 968 A.2d 1282, 1287 (Pa. Super. 2009). We do so here and overrule the BHA's preliminary objection.

## Conclusion

For the above-stated reasons, we overrule the preliminary objections of the BHA. The BHA is directed to file an answer to the Petition within 30 days of this order.

_____
PATRICIA A. McCULLOUGH, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

C.S.,                                          :
            Petitioner                        :
                                         :   No. 440 M.D. 2017
         v.                                 :
                                         :
Commonwealth of Pennsylvania,              :
Department of Human Services,              :
Bureau of Hearings and Appeals,           :   CASE SEALED
            Respondent                     :

## ***ORDER***

AND NOW, this 10th day of April, 2018, the preliminary objections filed by the Department of Human Services, Bureau of Hearings and Appeals (BHA) are overruled. The BHA is directed to file an answer to the Petition for Declaratory Judgment filed by C.S. within 30 days of this order.

                                            _____
                                            PATRICIA A. McCULLOUGH, Judge