IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.W., M. A., W. B., T. W., P.L.,  :
La Liga Del Barrio and Philadelphia  :
Lawyers for Social Equity,  :
                                :
                Petitioners  :
                                :
              v.  :  No. 396 M.D. 2022
                                :  Argued: November 6, 2024
Commonwealth of Pennsylvania,  :
Department of Human Services,  :
                                :
              Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge
                  HONORABLE LORI A. DUMAS, Judge
                  HONORABLE STACY WALLACE, Judge
                  HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                               FILED: April 23, 2025

Before this Court, in our original jurisdiction, are Respondent Commonwealth of Pennsylvania, Department of Human Services' (DHS) Preliminary Objections (POs) to Petitioners A.W., M.A., W.B., T.W., and P.L. (Individual Petitioners) and La Liga Del Barrio and Philadelphia Lawyers for Social Equity's (Organizational Petitioners) (collectively, Petitioners) Petition for Review (PFR) asserting lack of standing, failure to exhaust administrative remedies, and

mootness. In addition, we are presented with Petitioners' Application for Summary Relief (ASR) challenging the constitutionality of the Child Protective Services Law (CPSL), 23 Pa. C.S. §§6301-6395. Upon review, we sustain DHS's PO that the Organizational Petitioners lack standing, overrule the remaining POs, and deny Petitioners' ASR.

## I. Background

In 2022, Petitioners filed the PFR and ASR challenging the statutory scheme of the CPSL as unconstitutional, both facially and as applied to them, insofar as it requires DHS to immediately list persons identified as perpetrators of child abuse in an indicated report on the ChildLine and Abuse Registry (ChildLine Registry or Registry), a statewide database maintained by DHS, without providing prior notice or a hearing. Under the CPSL, a person who is listed as a perpetrator of abuse has the right to challenge an indicated report in a post-deprivation hearing, *after* his or her name is listed on the Registry. Section 6341(a)(2) of the CPSL, 23 Pa. C.S. §6341(a)(2). Petitioners assert that the CPSL's post-deprivation hearing process does not satisfy due process. They seek declaratory and injunctive relief.

In support, Individual Petitioners alleged that they were each the subject of an erroneous indicated report of child abuse and were immediately placed on the ChildLine Registry and identified as child abusers. La Liga del Barrio (La Liga) is a Philadelphia-based non-profit youth basketball league, which depends on community volunteers. Philadelphia Lawyers for Social Equity (PLSE) is a non-profit legal service organization that provides advice and representation to low-income residents facing social and career barriers based on criminal records. PFR, ¶¶14-18, 20-21.

2

Petitioners alleged that the immediate placement of Individual Petitioners' names on the ChildLine Registry without prior notice and an opportunity to be heard compromised numerous fundamental constitutional rights; trapped them under an ongoing threat of disclosure; threatened their employment and employment opportunities; and irreparably stigmatized them in the eyes of employers, potential employers, community organizations, schools, and numerous other organizations and individuals with access to the Registry. They further alleged that being falsely named in the indicated report precluded them from providing foster or adoptive care; volunteering or participating in educational and recreational activities of children, including their own; and volunteering or participating in community organizations that have direct contact with children, such as La Liga. They claim that the deleterious effects from being falsely labeled a "child abuser" based on unproven allegations cannot be effectively remedied by the CPSL's post-deprivation process because the resulting harm and stigma is immediate and often irreparable. PFR, ¶¶98-182.

As for the Organizational Petitioners, Petitioners alleged that the CPSL and the ChildLine Registry deprive La Liga of essential volunteers and clog PLSE's docket, thereby directly harming each organization's operation and mission. According to Petitioners, approximately 90% of indicated reports between 2019 and 2021 were overturned, which shows that the indicated reports on the ChildLine Registry are often seriously flawed, inaccurate, and lack evidentiary support. Unless this Court declares the practice of immediately listing subjects of indicated reports on the ChildLine Registry to be unconstitutional, thousands of Pennsylvania citizens will remain subject to this process and will continue to suffer devastating long-term effects of being falsely identified as child abusers in violation of their constitutional

3

rights. PFR, ¶¶183-204. In support of these allegations, Petitioners provided sworn declarations. *See* PFR, Declarations.

In response, DHS filed POs to Petitioners' PFR asserting lack of standing, failure to exhaust administrative remedies, and mootness. DHS also filed an answer to Petitioners' ASR disputing material facts.

This Court stayed the matter pending our disposition of *S.F. v. Department of Human Services*, 298 A.3d 495 (Pa. Cmwlth. 2023) (*en banc*), involving similar constitutional claims presented by public school teachers. In *S.F.*, this Court held that teachers were entitled to notice and pre-deprivation hearings *prior* to being listed on the ChildLine Registry because of the harm caused by the CPSL's heightened notification requirements applicable to teachers under the Public School Code of 1949 (School Code).[1] *See S.F.*, 298 A.3d at 516, 523 (under the School Code, notice that a teacher is an alleged perpetrator of child abuse may provide cause for discharge).

After *S.F.*, this Court lifted the stay in this matter and directed supplemental briefing addressing the applicability of *S.F.* to this case. Petitioners aver that, during the stay, Individual Petitioners A.W., M.A., T.W. and P.L. (but not W.B.) have successfully had their names removed from the Registry. Petitioners' Brief, at 10. Notwithstanding, Petitioners maintain that these individuals still suffered deleterious and long-lasting effects by having their names placed on the Registry without prior notice and hearing in violation of their due process rights. *Id.* We begin by addressing DHS's POs.[2]

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-101 – 27-2702.

[2] As this Court has explained:

**(Footnote continued on next page…)**

4

> In ruling on [POs], we must accept as true all well-pleaded material allegations in the [PFR], as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain [POs], it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.
>
> A [PO] in the nature of a demurrer admits every well-pleaded fact in the [PFR] and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the [PFR].

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted).

In addition, POs are limited to the following grounds:

> (1) lack of jurisdiction over the subject matter of the action or the person of the defendant, improper venue or improper form or service of a writ of summons or a complaint;
>
> * * *
>
> (2) failure of a pleading to conform to law or rule of court or inclusion of scandalous or impertinent matter;
>
> (3) insufficient specificity in a pleading;
>
> (4) legal insufficiency of a pleading (demurrer);
>
> (5) lack of capacity to sue, nonjoinder of a necessary party or misjoinder of a cause of action;
>
> (6) pendency of a prior action or agreement for alternative dispute resolution;
>
> * * *
>
> (7) failure to exercise or exhaust a statutory remedy; and
>
> (8) full, complete and adequate non-statutory remedy at law.

Pa.R.Civ.P. 1028(a) (notes omitted).

5

## II. Discussion
### A. POs
#### 1. Standing

First, DHS contends that all Petitioners lack standing to proceed. As for Individual Petitioners, DHS claims that they lack a substantial, direct, and immediate injury to their reputation. By way of example, DHS highlights that Petitioner A.W. waited for 17 years *after* she was listed on the Registry to seek relief, despite the statutory requirement to seek review within 90 days of indicated report notification. DHS maintains that such a long delay demonstrates that she was not sufficiently aggrieved by the CPSL's post-deprivation procedures to confer standing. In addition, DHS claims it is entitled to discovery on the issue of whether Individual Petitioners are aggrieved.

As for the Organizational Petitioners, DHS asserts that PLSE's desire to have fewer clients seeking assistance in having their names removed from the ChildLine Registry is not an injury that confers standing. DHS claims that La Liga's desire to have more volunteers serving its organization is equally remote. According to DHS, the Organizational Petitioners' assertions of injury are no different than hypothetical complaints on behalf of citizens generally.

Pennsylvania Rule of Civil Procedure (Rule) 1028(a)(5) permits a PO to be filed on the basis that a petitioner lacks capacity to sue or standing. *Chester Upland School District v. Rossi*, 275 A.3d 1117, 1124 (Pa. Cmwlth. 2022); *see Interest of K.N.L.*, 284 A.3d 121, 151 n.22 (Pa. 2022) ("Generally, a challenge to standing is properly pleaded by way of [PO] or similarly[ ]styled pleading."); *C.G. v. J.H.*, 172 A.3d 43, 54 (Pa. Super. 2017), *aff'd*, 193 A.3d 891 (Pa. 2018) ("Because standing goes to a party's capacity to sue, a standing objection is properly raised by [PO] under Rule 1028(a)(5).").

6

"Standing is a justiciability concern--a threshold requirement that must be established prior to judicial resolution of a dispute." *Pennsylvania State Education Association v. Public School Employees' Retirement Board*, 311 A.3d 1017, 1028 (Pa. 2024) (*PSEA*) (citation and quotation omitted); *accord Ivy Hill Congregation of Jehovah's Witnesses v. Department of Human Services*, 310 A.3d 742, 752-53 (Pa. 2024). "[T]he standing doctrine protects against improper plaintiffs by preventing litigation by a person who is not adversely impacted by the matter he seeks to challenge." *PSEA*, 311 A.3d at 1028-29 (citations, quotations, and footnotes omitted).

The hallmark of standing is that a party must be "adversely affected" by the matter it seeks to challenge, otherwise the party "is not 'aggrieved' thereby." *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975). As our Supreme Court has explained:

> [A] controversy is worthy of judicial review only if the individual initiating the legal action has been aggrieved. A party who is not negatively affected by the matter he seeks to challenge is not aggrieved, and thus, has no right to obtain judicial resolution of his challenge. This principle is based upon the practical reason that unless one has a legally sufficient interest in a matter, that is, is "aggrieved," the courts cannot be assured that there is a legitimate controversy.

*PSEA*, 311 A.3d at 1029 (citations, quotations, and footnotes omitted).

A party is aggrieved if it has a "substantial, direct, and immediate interest in the outcome of the litigation." *PSEA*, 311 A.3d at 1029. As consistently framed:

> A party's interest is *substantial* when it surpasses the interest of all citizens in procuring obedience to the law; it is *direct* when the asserted violation shares a causal

7

> connection with the alleged harm; finally, a party's interest is *immediate* when the causal connection with the alleged harm is neither remote nor speculative.

*Id.* (quoting *Office of the Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014)) (emphasis added). "An association has standing as a representative of its members, even in the absence of injury to itself, if it establishes at least one of its members has standing individually." *Shirley v. Pennsylvania Legislative Reference Bureau*, 318 A.3d 832, 852 (Pa. 2024); *accord Ivy Hill*, 310 A.3d at 748.

Here, Individual Petitioners were each listed on the ChildLine Registry and alleged that their placement on the Registry affected their reputation and restricted their familial, educational, and/or professional pursuits. For example, Petitioners allege that A.W. was precluded from going on school trips with her grandchildren or otherwise participating in her grandchildren's educational and recreational activities. PFR, ¶117. A.W. was denied multiple employment opportunities as a result of being improperly listed on the ChildLine Registry. PFR, ¶115. M.A. was required to take a leave of absence from nursing school and was not permitted to complete her training in a hospital setting. PFR, ¶130. W.B., who currently lives and works in New York, still cannot work in Pennsylvania as a therapist despite being cleared of child abuse charges in New York. PFR, ¶¶142, 145. T.W., a single mother of two, could not volunteer at school, chaperone school trips, or attend her children's educational and recreational activities; she also faced the possibility of losing her nursing job at the Children's Hospital of Philadelphia. PFR, ¶¶152, 165-66. P.L. was barred from employment opportunities in the healthcare and childcare fields. PFR, ¶¶167, 176, 180. Although Petitioners aver that, during the pendency of this matter, all but W.B. have successfully had their names removed from the Registry, Petitioners allege that these individuals still suffered deleterious effects by having their names placed on the Registry without

8

prior notice and a hearing in violation of their due process rights. Petitioners' Brief, at 10. We conclude that such alleged harm constitutes a direct, substantial, and immediate interest in the outcome of this litigation for standing purposes.

As for the Organizational Petitioners, La Liga's basis for standing is that it struggles to find enough volunteers to keep its organization running because people are unable to provide the required clearances. PFR, ¶¶45-46, 50, 184-86, 189-90, and Declaration of La Liga. PLSE claims that it is aggrieved because some of its clients have been placed on the ChildLine Registry based on indicated reports, and its attorneys are forced to divert resources away from its primary mission of expunging criminal records to address erroneous child abuse indications. PFR, ¶¶203-04, and Declaration of PLSE.

Although both organizations provided examples of how some of their members have been impacted by the CPSL, Organizational Petitioners seek standing based on alleged injuries to the organizations themselves, in terms of lost or diverted resources, but not as representatives of their members. Their interests, as pled and supported by declarations, are too remote and indirect to confer these groups with standing necessary to challenge the post-deprivation provisions of the CPSL. Upon review, we sustain DHS's standing PO insofar as it relates to the Organizational Petitioners and overrule the PO with regard to Individual Petitioners. As a result, we dismiss PLSE and La Liga as Petitioners from this action.

**2. Ripeness - Failure to Exhaust Administrative Remedies**

Next, DHS objects on the ground that Individual Petitioners' claims are not ripe because they failed to exhaust available administrative remedies, which is a fatal defect to their as-applied challenge. Even accepting Petitioners' claim that four of the five Individual Petitioners have exhausted their administrative remedies and

9

received relief from DHS, W.B. has not. W.B.'s name remains on the Registry. Having failed to exhaust administrative remedies, W.B. should not be permitted to seek redress in this Court. "Further, without discovery[,] it remains unclear to what extent [Individual] Petitioners A.W., M.A., T.W., and P.L. have exhausted their administrative remedies – if at all." Respondent's Brief in Support of POs and in Opposition to the ASR, at 34.

As our Supreme Court has recognized, "[t]here is considerable overlap between the doctrines of standing and ripeness . . . ." *Robinson Township, Washington County v. Commonwealth*, 83 A.3d 901, 917 (Pa. 2013). This overlap occurs

> especially where the contentions regarding lack of justiciability are focused on arguments that the interest asserted by the petitioner is speculative, not concrete, or would require the court to offer an advisory opinion. In this sense, a challenge that a petitioner's interest in the outcome of the litigation is hypothetical may be pled either as determinative of standing or restyled as a ripeness concern although the allegations are essentially the same. Standing and ripeness are distinct concepts insofar as ripeness also reflects the separate concern that relevant facts are not sufficiently developed to permit judicial resolution of the dispute. *Pure questions of law . . . do not suffer generally from development defects and are particularly well suited for pre-enforcement review*.

*Id*. (citations omitted and emphasis added).

Here, there is an administrative remedy available to Individual Petitioners to have the reports expunged and their names removed from the Registry, which, according to Petitioners, four of the five Individual Petitioners have exhausted. Although DHS can expunge a report after the fact, there is no remedy available to redress the alleged harms caused by the immediacy of posting Individual

10

Petitioners' names on the ChildLine Registry before notice or an opportunity to be heard. We, therefore, overrule this PO.

### 3. Mootness

Next, DHS argues that, accepting that Individual Petitioners A.W., M.A., T.W., and P.L. have exhausted their administrative remedies, and that their names have been removed from the Registry, as alleged, their claims are moot. We disagree.

"Pennsylvania courts generally will not decide moot claims." *Martin v. Donegal Township*, 325 A.3d 502, 508 (Pa. 2024) (citation and quotation omitted). "A claim is moot if the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Id.* (citation and quotation omitted). Exceptions to the mootness doctrine "are made where (1) the conduct complained of is capable of repetition yet likely to evade review, (2) the case involves issues important to the public interest, or (3) a party will suffer some detriment without the court's decision." *Chruby v. Department of Corrections*, 4 A.3d 764, 771 (Pa. Cmwlth. 2010).

Here, simply because Petitioners A.W., M.A., T.W., and P.L. had their names removed from the ChildLine Registry does not render their claims moot. Their constitutional rights were infringed by the initial placement of their names on the ChildLine Registry without first receiving notice or a pre-deprivation hearing. Although persons listed on the ChildLine Registry can request expungement of an indicated report and removal of their name *after the fact*, the damage done to their reputations and other harms alleged have already occurred. *See C.S. v. Department of Human Services, Bureau of Hearings and Appeals*, 184 A.3d 600, 607 (Pa. Cmwlth. 2018) (recognizing that an individual's reputation is immediately harmed

11

the moment the abuse is reported). If the report is later expunged and the name is removed, DHS would argue, as it has argued here, that the person named in the report is no longer aggrieved and lacks standing to seek review and that the controversy is moot. However, DHS's position creates a Catch-22 situation where persons aggrieved by the pre-deprivation process can never challenge it. Therefore, this controversy is not moot. Even if it were, the conduct complained of is capable of repetition yet likely to evade review. Further, the deprivation of fundamental constitutional rights is obviously of great public importance as is the protection of children from abuse. For these reasons, we overrule DHS's mootness PO. We now turn to Petitioners' ASR.

**B. ASR**

Petitioners seek both declaratory and injunctive relief on the basis that the CPSL's ChildLine Registry process violates due process and is unconstitutional, both facially and as applied to them. They claim that the absence of a pre-deprivation remedy significantly violated their due process rights based on damage to reputation, the deprivation of employment opportunities, the inability to provide foster or adoptive care, and the inability to volunteer or participate in various community, educational, and recreational activities involving children, including their own.

In support, Petitioners rely on this Court's recent decision in *S.F.*, in which we determined that the pre-deprivation process of identifying a person as a child abuser on the ChildLine Registry before affording him or her an opportunity to be heard was unconstitutional as applied to teachers. Petitioners argue that the holding in *S.F.* should not be limited to teachers but should be expanded to anyone identified as a perpetrator of child abuse on the ChildLine Registry. All

12

Pennsylvanians have a protected liberty interest in pursuing lawful employment without undue governmental interference. An increasing set of employers and agencies now require child abuse clearances using information on the ChildLine Registry. According to Petitioners, the collective experiences of Individual Petitioners demonstrate the profound and devastating impacts that being falsely labeled a child abuser inflicts on all individuals, regardless of occupation. Petitioners allege that the impacts from the denial of due process in connection with erroneous indicated reports of child abuse fall disproportionately on poor mothers and families of color. For these reasons, Petitioners assert that they are entitled to summary relief.[3]

A constitutional challenge to a statute presents a question of law in which our standard of review is *de novo*, and our scope of review is plenary. *Martin*, 325 A.3d at 509. "There are two types of constitutional challenges, facial and as applied." *Roberts v. Pennsylvania State Employees' Retirement Board*, 302 A.3d 274, 279 (Pa. Cmwlth. 2023) (citation and internal quotation omitted). "A facial challenge tests constitutionality of a statute as written and does not consider the facts" or circumstances of a particular case. *Id*. (citation and internal quotation omitted). For a facial challenge to succeed, a petitioner must prove that there is no

---

[3] As this Court has explained:

> An [ASR] may be granted if a party's right to judgment is clear, and no material issues of fact are in dispute. When ruling on an [ASR], we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law.

*Gregory v. Pennsylvania State Police*, 185 A.3d 1202, 1205 (Pa. Cmwlth. 2018) (citations and quotations omitted).

set of circumstances under which a statute is valid. *See East Coast Vapor, LLC v. Pennsylvania Department of Revenue*, 189 A.3d 504, 511 (Pa. Cmwlth. 2018).

Conversely, "[a]n as-applied constitutional challenge does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Martin*, 325 A.3d at 509. When considering a constitutional challenge, we are mindful that

> [t]here is a strong presumption in the law that statutes are constitutional. A party challenging the constitutionality of a statute bears a very heavy burden of persuasion. A statute may not be deemed unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional.

*Id.* (internal citations and quotations omitted). With these principles in mind, we examine the CPSL.

The General Assembly enacted the CPSL to "encourage more complete reporting of suspected child abuse," "establish in each county protective services for the purpose of investigating the reports swiftly and competently," and "ensure that each county children and youth agency establish[es] a program of protective services . . . with the capabilities to respond adequately to meet the needs of the family and child who may be at risk . . . ." Section 6302(b) of the CPSL, 23 Pa. C.S. §6302(b).

Under Section 6334(a) of the CPSL, any allegation of suspected child abuse is immediately referred to the appropriate county child welfare agency for investigation. 23 Pa. C.S. §6334(a). At the close of the investigation, the agency will determine whether the report is either "indicated" or "founded," meaning

14

substantial evidence[4] of the alleged abuse exists, or "unfounded," meaning there is no substantial evidence. Sections 6338(a) and 6368(f) of the CPSL, 23 Pa. C.S. §§6338(a), 6368(f). The CPSL broadly defines "child abuse" to include conduct ranging in severity from physical or sexual abuse of a child to "serious physical neglect," including the failure to provide a child with appropriate supervision or "adequate essentials of life, including food, shelter or medical care." Section 6303(a) and (b.1) of the CPSL, 23 Pa. C.S. §6303(a), (b.1).

All founded or indicated reports are immediately placed and maintained on the ChildLine Registry, which is accessible to certain persons, such as authorized government officials or agents, physicians examining or treating the abused child, guardians ad litem, courts of competent jurisdiction, standing committees of the General Assembly, the Attorney General of Pennsylvania, law enforcement officials, school administrators and childcare service employers, and adoption agencies, under limited circumstances. Sections 6336 and 6340 of the CPSL, 23 Pa. C.S. §§6336, 6340.

A person named as a perpetrator in an indicated report of child abuse may request administrative review within 90 days *after* notification of being named in an indicated report. Section 6341(a)(2) of the CPSL, 23 Pa. C.S. §6341(a)(2). Such a request triggers the right to a post-deprivation hearing. Section 6341(c.2) of the CPSL, 23 Pa. C.S. §6341(c.2). The hearing must comply with the following procedures:

> (1) Within ten days of receipt of an appeal pursuant to this section, the [D]epartment shall schedule a hearing on the merits of the appeal.

---

[4] "Substantial evidence is such evidence that outweighs any conflicting evidence that [an] alleged perpetrator's conduct constituted child abuse." *F.V.C. v. Department of Public Welfare*, 987 A.2d 223, 228 (Pa. Cmwlth. 2010).

(2) The [D]epartment shall make reasonable efforts to coordinate the hearing date with both the appellee and appellant.

(3) After reasonable efforts required by paragraph (2) have been made, the [D]epartment shall enter a scheduling order, and proceedings before the Bureau of Hearings and Appeals shall commence within 90 days of the date the scheduling order is entered, unless all parties have agreed to a continuance. Proceedings and hearings shall be scheduled to be heard on consecutive days whenever possible, but if not on consecutive days, then the proceeding or hearing shall be concluded not later than 30 days from commencement.

(4) The [D]epartment or county agency shall provide a person making an appeal with evidence gathered during the child abuse investigation within its possession that is relevant to the child abuse determination, subject to [S]ections 6339 (relating to confidentiality of reports) and 6340 (relating to release of information in confidential reports).

(5) The [D]epartment or county agency shall bear the burden of proving by substantial evidence that the report should remain categorized as an indicated report.

Section 6341(c.2)(1)-(5) of the CPSL, 23 Pa. C.S. §6341(c.2)(1)-(5). Once the hearing concludes, the administrative law judge or hearing officer must issue a decision within 45 days. Section 6341(c.3) of the CPSL, 23 Pa. C.S. §6341(c.3). The Secretary of Human Services may amend or expunge an indicated report, at any time, upon good cause shown that the report is inaccurate. Section 6341(a)(1) of the CPSL, 23 Pa. C.S. §6341(a)(1). Until a decision is made to amend or expunge an inaccurate report, the indicated report remains on the ChildLine Registry. Under the CPSL, there is no pre-deprivation mechanism to challenge indicated reports before entry into the Registry.

16

"Generally, the Pennsylvania and United States Constitutions require some kind of a hearing before the State deprives a person of a protected liberty or property interest in order to minimize 'substantially unfair or mistaken deprivations.'" *S.F.*, 298 A.3d at 518 (quoting *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). "'Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.'" *Washington v. Pennsylvania Department of Corrections*, 306 A.3d 263, 285 (Pa. 2023) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)).

An individual's right to life, liberty, and property is enshrined in the United States and Pennsylvania Constitutions. U.S. Const. amend. XIV, §1; Pa. Const. art. I, §1. No state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, §1. Under the Pennsylvania Constitution, "the right to reputation . . . is a fundamental right." *In the Interest of J.B.*, 107 A.3d 1, 16 (Pa. 2014); *accord G.V.*, 91 A.3d at 672-73. The ability to pursue employment and familial interests are protected liberty interests. *S.F.*, 298 A.3d at 512; *see In re Doe*, 33 A.3d 615, 625 (Pa. 2011); *Rogers v. Pennsylvania Board of Probation and Parole*, 724 A.2d 319, 322 (Pa. 1999).

However, "[t]here are limited circumstances where post-deprivation remedies can satisfy due process . . . where the situation dictates that the State take immediate action or it is impracticable to provide any meaningful pre-deprivation process." *S.F.*, 298 A.3d at 518 n.20 (citing *Bell v. Burson*, 402 U.S. 535, 542

17

(1971)). The courts must engage in a balancing test between the important governmental interest and the individual's rights. *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 897 (Pa. 2020); *R. v. Department of Public Welfare*, 636 A.2d 142, 146 (Pa. 1994). In determining the amount of process that is due, the courts are guided by a three-part balancing test, which was enunciated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Danny DeVito*, 227 A.3d at 897; *see Washington*, 306 A.3d at 285; *G.V.*, 91 A.3d at 669; *R.*, 636 A.2d at 146. The *Mathews* test considers:

> [(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements will entail.

*Mathews*, 424 U.S. at 335.

Pennsylvania courts have applied the *Mathews* test in addressing the constitutionality of the CPSL's post-deprivation procedure. *See G.V.*, 91 A.3d at 669, 672; *R.*, 636 A.2d at 146-47; *S.F.*, 298 A.3d at 510-11. The courts have weighed the government's interest in preventing child abuse and keeping children safe against the private interests of not stigmatizing those who are innocent or wrongfully accused or foreclosing them from employment and other opportunities. *See G.V.*, 91 A.3d at 673-74; *R.*, 636 A.2d at 151-52; *S.F.*, 298 A.3d at 510-11.

Regarding the first prong of the *Mathews* test – the private interest affected by the CPSL – this Court has recognized that the "[p]lacement on a registry for alleged child abuse causes damage to the alleged abuser, primarily in the form of reputational harm and employment repercussions." *C.S.*, 184 A.3d at 607 (citation

and quotation omitted). "[T]hat harm occurs to an individual's reputation the moment the abuse is reported, the aggravation of which continues unless or until the record is expunged." *Id*.

Under the second prong, our Supreme Court has found that the risk of an erroneous deprivation of such interest through the CPSL's ChildLine Registry was "very limited" given that "only a limited number of people in a limited set of situations have access to the confidential statewide Registry." *G.V.*, 91 A.3d at 672-73; *accord R*. 636 A.2d at 150 (finding the General Assembly "has circumscribed access to [the Registry] to such an extent that no one other than those persons in a position to serve the government's interest is authorized to learn of [an alleged abuser's] identity").

In resolving the due process claims asserted in *R.*, an appeal from a denial of expungement, the Supreme Court focused on the extent to which the information contained in an indicated report was readily available or accessible and the circumstances under which the accused perpetrator's identity could be revealed. *R.*, 636 A.2d at 149. The Supreme Court rationalized that persons listed in the ChildLine Registry as perpetrators of child abuse are not "stigmatized in the eyes of the general public" because the general public does not have access to the Registry. *Id.* at 150. The Court observed that the identity of a perpetrator "is disclosed to a small number of persons in a very narrow range of situations with the understanding that it will not be revealed to any unauthorized individuals." *Id*.; *see* 23 Pa. C.S. §6340. In *R.*, the Supreme Court found that the petitioner did not suffer a reputational injury of constitutional significance because he had not attempted to apply for a job in a school or childcare setting or to adopt a child, which would have

19

prompted disclosure of the indicated report. *R.*, 636 A.2d at 147-48. Consequently, "any adverse effects on his reputation [were] very limited." *Id*. at 150.

As to the third prong under *Mathews*, the Supreme Court also recognized the Commonwealth's urgent need to protect children from abuse. *R.*, 636 A.2d at 151 (citing 23 Pa. C.S. §6302). Ultimately, the Supreme Court determined that the private liberty interests of the petitioner did not outweigh the Commonwealth's paramount interests in protecting children from abuse. *Id.* Thus, our Supreme Court held that the CPSL's post-deprivation remedies satisfied due process. *Id*.

Later, in *G.V.*, another appeal from an expungement denial, the Supreme Court followed *R.* in rejecting the petitioner's similar due process claims.[5] 91 A.3d at 672-73. The Supreme Court again determined that the limited adverse effects on the accused's reputation did not outweigh "the government's interest in addressing the urgent need of abused children for protection from further injury and impairment" under the *Mathews* test. *Id*. at 673. The Supreme Court emphasized: "The government's interest in addressing the urgent need of abused children for protection from further injury and impairment encompasses both the child [and] children who were actually abused by the perpetrator, as well as any children who may potentially be abused by the perpetrator." *Id*. at 673-74. The "Commonwealth's interests in the need to prevent child abuse and to protect abused children from further injury is fostered by maintenance of the statewide central registry identifying perpetrators of abuse." *Id*. at 673.

---

[5] We note that former Justice Saylor authored a robust concurring opinion in *G.V.* in which he took issue with the majority's reliance on *R.* in its due process assessment and "overly dismissive approach to the reputational concerns of persons whose names are entered in a child-abuse registry," recognizing "there is substantial stigma associated with inclusion of one's name in a child-abuse registry." *G.V.*, 91 A.3d at 674-75 (Saylor, J., concurring).

20

In *S.F.*, this Court carved out an as-applied exception for teachers because of heightened notification requirements applicable to them. *S.F.*, 298 A.3d at 523. Therein, a teacher named in an indicated report challenged the CPSL's lack of a pre-deprivation hearing process as unconstitutional both facially and as-applied specifically to her and other teachers. The teacher alleged she had significant liberty and property interests affected by being listed in the ChildLine Registry as a perpetrator of child abuse in an indicated report before being afforded an opportunity to challenge the charge and prove her innocence. Because of her teaching job, she alleged that she not only faced immediate, significant, and irreparable reputational harm but also loss of employment. Pursuant to the CPSL, when the allegations relate to a teacher, DHS has a mandatory duty to send notice of the allegations to the relevant school employer, which, in turn, is required to immediately implement a supervision plan for the teacher under investigation to ensure child welfare, which involves others in the school and community. *Id.* at 507; *see* 23 Pa. C.S. §6340(a)(13); 23 Pa. C.S. §6368(i). The teacher alleged that "the number of people to whom notice of an indicated report is given is exponentially higher for teachers as compared to non-educators." *S.F.*, 298 A.3d at 513. Therefore, she argued that the harm imposed upon teachers is greater than the public-at-large.

In *S.F.*, this Court recounted "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." 298 A.3d at 510. We recognized that, under the CPSL, "the opportunity to challenge the appropriateness of one's placement on the ChildLine Registry comes only after the fact." *Id.* at 523. We found that "the placement on the ChildLine Registry causes an immediate and irreparable harm to the teacher's

21

reputation and employment prospects." *Id.* "By the time the post-deprivation hearing is held, the damage to the teacher's reputation has already been done and might not be capable of being undone by a later finding that the allegations of abuse were unfounded." *Id.*

Applying the *Mathews* factors, we opined:

> On balance, [the teacher's] constitutional rights and the high risk of erroneous deprivation, when compared to the Commonwealth's interests in denying [the teacher] a pre-deprivation hearing, the feasibility of providing a prompt pre-deprivation hearing, and the many safeguards that are in place to protect the students once a possible abuser is identified, tilt toward the conclusion that [the teacher] and other teachers must be afforded a pre-deprivation hearing before an impartial [administrative law judge] before being listed as a perpetrator in an indicated report on the ChildLine Registry and in a founded report, based on [accelerated rehabilitative disposition]. The post-deprivation process as applied to [the teacher] and other teachers is simply not adequate to cure the constitutional violation caused by placement on the ChildLine Registry without a pre-deprivation hearing.

*S.F.*, 298 A.3d at 532-33.

Applying the third factor of the *Mathews* test, we recognized "the government has a paramount interest in keeping child abuse out of our schools and doing so in an expeditious manner." *S.F.*, 298 A.3d at 502. The administrative burden of providing pre-deprivation hearings limited to teachers was not significant. *S.F.*, 298 A.3d at 527. We found, based on unchallenged evidence, that "only 75 out of the 5,655 alleged perpetrators named in either indicated or founded reports of child abuse in 2019 were school employees," and, thus, "the number of pre-deprivation hearings afforded to teachers would be relatively minimal" and "would create only a slight administrative burden." *Id.* at 526-27.

22

Ultimately, we concluded that, "as applied" to the teachers, Section 6368 of the CPSL did not provide adequate procedural due process protections given the additional safeguards applicable to the profession. *S.F.*, 298 A.3d at 532. However, we did not address whether the CPSL was facially unconstitutional because the parties' cross-applications for partial summary relief were limited to the as-applied challenges. Thus, we granted relief on the basis that "[t]he post-deprivation process *as applied* to [the teacher petitioner] and other teachers is simply not adequate to cure the constitutional violation caused by placement on the ChildLine Registry without a pre-deprivation hearing." *Id.* at 533 (emphasis added).

Critically, our holding in *S.F.* was limited to teachers. 298 A.3d at 532. We distinguished the petitioner in *S.F.* from those in *G.V.* and *R. Id.* As our Supreme Court determined, the petitioners in *G.V.* and *R.* did not suffer reputational injury of a constitutional significance because the information on the ChildLine Registry is not generally available to the public but only to select persons and only if the petitioners attempted to adopt a child or applied to work in a position involving contact with children. *S.F.*, 298 A.3d at 514. In *G.V.* and *R.*, the petitioners' reputations were not significantly harmed by the post-deprivation appeal process because they did not apply for a job in a school or childcare setting or attempt to adopt a child. *S.F.*, 298 A.3d at 514; *see G.V.*; *R.* Therefore, the adverse effects to reputation to petitioners in *G.V.* and *R.* were "very limited." *S.F.*, 298 A.3d at 514 (quoting *R.*, 636 A.2d at 150). Conversely, we opined that teachers "are immediately harmed when allegations against them are made to the ChildLine Registry." *Id.* "[T]eachers accused of child abuse cannot shield accusations from the view of their employer, prospective employers, colleagues, and conceivably, the parents of the students they serve." *Id.* "[A] teacher named as a perpetrator in an indicated report

23

of child abuse faces an almost insuperable impediment to obtaining a position in education." *Id*. at 515.

Relying on the foregoing, Petitioners ask this Court to declare the CPSL as unconstitutional, both facially and as applied. As for the facial challenge, as we observed in *S.F.*:

> There is a strong presumption that legislation like the CPSL is constitutional and, therefore, cannot be declared unconstitutional unless it is found to "clearly, palpably and plainly" violate the Constitution. *Commonwealth v. Craven*, [817 A.2d 451, 454 (Pa. 2003)] (quotation omitted); 1 Pa. C.S. § 1922(3) (presuming that "the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth"). Further, . . . [a p]etitioner . . . challenging the constitutionality of the CPSL . . . "bear[s] a heavy burden of persuasion" with respect to [those] claims. *Commonwealth v. MacPherson*, [752 A.2d 384, 388 (Pa. 2000)]. Any doubts about whether [the p]etitioner has met this high burden must be resolved in favor of finding the statute constitutional. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, [877 A.2d 383, 393 (Pa. 2005)].

298 A.3d 495, 510 n.14; *see Martin*, 325 A.3d at 509. Although Petitioners contend that the CPSL is facially unconstitutional, they have not demonstrated that there is no set of circumstances under which the statute is valid. *See East Coast Vapor*, 189 A.3d at 511. Thus, Petitioners have not met their heavy burden of proving that the CPSL is unconstitutional as written at this juncture.

As for the as-applied challenges, Petitioners ask this Court to extend the holding in *S.F.* to non-teachers, claiming their rights to pursue employment opportunities and other activities involving children have been equally harmed. Petitioners advance that child abuse history clearances are required for a broad array

24

of positions having "direct contact with children," not just teaching jobs. PFR, ¶¶45, 91, 202; *see* Section 6344 of the CPSL, 23 Pa. C.S. §6344; Section 111.1 of the School Code[6] (requiring ChildLine clearance checks for "all positions for employment at school entities and independent contractors of school entities involving direct contact with children"). Child abuse clearances are also required to volunteer with a childcare service, a school or a school program, activity, or service having direct contact with children, including community organizations, like La Liga. PFR, ¶¶50, 185; *see* Section 6344.2 of the CPSL, 23 Pa. C.S. § 6344.2. Petitioners allege that, in 2021, 788,344 requests were made for child abuse clearances. PFR, ¶48.

As for the harm Individual Petitioners personally suffered by being improperly listed on the ChildLine Registry without a pre-deprivation hearing, Petitioners allege that A.W. was precluded from going on school trips with her grandchildren or otherwise participating in her grandchildren's educational and recreational activities. PFR, ¶117. A.W., a nursing assistant, was denied multiple employment opportunities. PFR, ¶115. M.A. was required to take a leave of absence from nursing school and was not permitted to complete her training in a hospital setting after a clearance check showed an indicated report on her record. PFR, ¶130. W.B., who now lives and works in New York as a therapist for children in the foster care system, cannot return to Pennsylvania because she would not be able to work in her profession because she is still listed on the Registry. PFR, ¶¶134, 139. T.W., a single mother of two, could not volunteer at school, chaperone school trips, or attend her children's educational and recreational activities; she also faced the possibility of losing her job at the Children's Hospital of Philadelphia. PFR, ¶¶165-

_____

[6] Added by the Act of October 22, 2014, P.L. 2624, 24 P.S. §1-111.1(a).

66. P.L. claims she was barred from employment opportunities in the healthcare and childcare fields as a result of her name being placed on the Registry. PFR, ¶167, 176, 180.

Petitioners allege that the placement of their names on the ChildLine Registry significantly interfered with their employment pursuits and their ability to participate in community, educational, and recreational activities involving children, including their own. They argue that this mistaken deprivation of their liberty interests amounts to significant harm that outweighs the government's interest in maintaining the CPSL's post-deprivation process.

Despite Petitioners' compelling allegations of harm, the allegations are contested, and material issues of fact remain in dispute. *See* DHS's Answer to ASR; DHS's Brief in Support of POs and Opposition to ASR, at 59-60. DHS asserts that it has not been able to conduct discovery and, therefore, cannot confirm the history of the allegations against Individual Petitioners; the notice that Individual Petitioners did or did not receive of the allegations or their "indicated" finding and right to appeal; the reasons Individual Petitioners were given a finding of "indicated"; the steps Individual Petitioners took, or did not take, to remove themselves from the Registry; the effects that being on the Registry had, or did not have, on the Individual Petitioners; their job histories; and the circumstances under which they were removed from the Registry. *See* DHS's Brief in Support of POs and Opposition to ASR, at 59-60.

The only evidence before this Court are Petitioners' affidavits, which are not enough for this Court to enter summary relief. *See Department of Transportation v. UTP Corp.*, 847 A.2d 801, 806 (Pa. Cmwlth. 2004) (citing *Penn Center House, Inc. v. Hoffman*, 553 A.2d 900 (Pa. 1989)) ("It is well established that

testimonial affidavits or deposition testimony alone, even if not contradicted, is insufficient to establish the absence of a genuine issue of material fact because the credibility of the testimony is a matter for the factfinder."). There is also no evidence regarding the administrative burden and feasibility of providing pre-deprivation hearings before an indicated report is posted on the ChildLine Registry. Without stipulations of fact or evidentiary support, we are unable to conclude that the risk of erroneous deprivation is so high for Individual Petitioners that it outweighs the government's interest in swiftly protecting children and the administrative burden of conducting pre-deprivation hearings. Because Petitioners' right to relief is not clear as a matter of law and material facts remain in dispute at this juncture, we deny the ASR.[7] *See Gregory v. Pennsylvania State Police*, 185 A.3d 1202, 1205 (Pa. Cmwlth. 2018).

### III. Conclusion

Based upon the foregoing, we sustain DHS's PO that Organizational Petitioners lack standing, and we dismiss PLSE and La Liga as Petitioners from this action. Otherwise, we overrule DHS's remaining POs. Because Petitioners' right to judgment is not clear and factual questions remain in dispute, we deny Petitioners' ASR without prejudice. We direct DHS to file an answer to the PFR. Thereafter, the parties shall engage in discovery in preparation for further proceedings, including the filing of dispositive motions, if appropriate.

MICHAEL H. WOJCIK, Judge

---

[7] By contrast, in *S.F.*, there were no material facts in dispute, which enabled this Court to resolve the parties' cross-applications for partial summary relief without additional discovery.

27

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A.W., M. A., W. B., T. W., P.L.,     :
La Liga Del Barrio and Philadelphia  :
Lawyers for Social Equity,        :
                                   :
             Petitioners     :
                                   :
        v.                 : No. 396 M.D. 2022
                                   :
Commonwealth of Pennsylvania,    :
Department of Human Services,     :
                                   :
            Respondent    :

# O R D E R

AND NOW, this 23rd day of April, 2025, Respondent Commonwealth of Pennsylvania, Department of Human Services' (DHS) preliminary objections (POs) to Petitioners' Petition for Review (PFR) are **SUSTAINED IN PART** insofar as Petitioners La Liga Del Barrio and Philadelphia Lawyers for Social Equity lack standing, and we dismiss these two parties as Petitioners from this action; the remaining POs are **OVERRULED**. Petitioners' Application for Summary Relief is **DENIED** without prejudice. DHS is **directed to file an Answer to the PFR within 30 days of this Order**. Thereafter, the parties shall engage in discovery in preparation for further proceedings, including the filing of further dispositive motions, if appropriate. Petitioners' Application for Leave to Exceed the Word Count Limit, filed on September 30, 2022, is **DISMISSED AS MOOT**.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

A. W., M. A., W. B., T. W., P.L.,               :
La Liga Del Barrio and Philadelphia            :
Lawyers for Social Equity,                      :
                                                :
                        Petitioners             :
                                                :  No. 396 M.D. 2022
            v.                                  :
                                                :  Argued:  November 6, 2024
Commonwealth of Pennsylvania,                   :
Department of Human Services,                   :
                                                :
                        Respondent              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


*OPINION NOT REPORTED*

**CONCURRING AND DISSENTING OPINION**
**BY JUDGE DUMAS**                              **FILED:  April 23, 2025**


        I respectfully concur in part and dissent in part.  I concur with the majority's disposition of (1) the preliminary objections addressing the standing of Petitioners A.W., M.A., W.B., T.W., and P.L. (Individual Petitioners), exhaustion, and mootness, and (2) the application for summary relief.  I respectfully dissent to the majority's decision sustaining the preliminary objection and dismissing, with prejudice, La Liga Del Barrio and Philadelphia Lawyers for Social Equity (Organizational Petitioners) for lack of standing.

Initially, I would not have dismissed Organizational Petitioners with prejudice. In my view, Organizational Petitioners have pleaded sufficient facts to withstand a challenge to their standing. *See Muth v. Dep't of Env't Prot.*, 315 A.3d 185, 196 (Pa. Cmwlth. 2024). Of course, following discovery, Respondent Department of Human Services (DHS) may still move for summary relief on the basis that Organizational Petitioners lack standing. *See id.* But even if Organizational Petitioners did not plead sufficient facts, I would have sustained the preliminary objection without prejudice and granted Organizational Petitioners leave to amend the petition for review. *See Jones v. City of Phila.*, 893 A.2d 837, 846 (Pa. Cmwlth. 2006) (noting "it is generally an abuse of discretion to dismiss a complaint without leave to amend" (cleaned up)).[1]

For these reasons, I respectfully concur in part and dissent in part.

**LORI A. DUMAS, Judge**

President Judge Cohn Jubelirer and Judge McCullough join.

---

[1] I would have resolved the application for summary relief as to Organizational Petitioners identically to the majority. This Court may entertain applications for summary relief even *before* the pleadings are closed. Pa.R.A.P. 1532(b) & note (providing that "such relief may be requested before the pleadings are closed where the right of the applicant is clear"). *Cf.* Pa.R.Civ.P. 1034 (stating that a motion for judgment on the pleadings may be filed *after* the pleadings are closed). Nevertheless, it seems generally premature to grant judgment on the pleadings or summary relief before (1) resolving preliminary objections or (2) an answer, new matter, cross-claims, or counterclaims are filed—no matter how meritorious the Rule 1532(b) application may be.